| | | |
|---|---|---|
| **RONALD V. PUNTILLO,** | : | **CIVIL NO. 1:05-CV-2370** |
| **Plaintiff** | : | **JUDGE SYLVIA H. RAMBO** |
| **v.** | : | |
| **NORMAN T. MINETA, Secretary**<br>**U.S. Department of Transportation,** | : | |
| **Defendant** | : | |

# M E M O R A N D U M

Plaintiff Ronald V. Puntillo sues his federal employer, the Federal Aviation Administration ("FAA") alleging that it violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") by retaliating against him for his participation and cooperation in an Equal Employment Opportunity ("EEO") claim of a female co-worker for sexual harassment and discrimination. Specifically, Plaintiff alleges that he suffered reprisals of purposeful failure to promote him to the position of assistant manager of the Harrisburg Flight Standards District Office ("Harrisburg FSDO"), and by continual attempted interference with his work duties and assignments. Before the court is Defendant's motion for summary judgment on all claims. (Doc. 53.) For the reasons that follow, the court will grant Defendant's motion.

I.      **Background**

A.      **Facts**

Viewed in the light most favorable to Plaintiff, the facts are as follows.

Plaintiff Ronald V. Puntillo began working for the FAA in 1989. (Pl.'s Ex. 33, Puntillo Dep't of Trans. Aff. 1.) At all times relevant to this case, Puntillo

was one of the most senior non-management employees[1] at the Harrisburg FSDO. (*Id.*; Pl.'s Ex. 49-1, Bailey Dep. 36.)

From 1998 through 2001, Puntillo assisted a co-worker, Brenda Bailey, with her complaint to the Equal Employment Opportunity Commission ("EEOC"). (Def.'s Ex. A, Puntillo Dep. 54.) Bailey's complaint to the EEOC was against Daniel Moyer and was resolved by settlement on April 4, 2001. (Def.'s Ex. C, Resolution Agreement.) On April 24, 2000, Puntillo filed an EEOC complaint of his own against Daniel Moyer alleging that he has been subject to a hostile work environment based upon age and reprisal. (Puntillo Dep. 52.) On April 20, 2001, the EEOC issued a final agency decision on Puntillo's complaint and found no discrimination. (Def.'s Ex. B, Report of Investigation at 3.)

From February 11, 2001 through July 14, 2001, Larry Kreider was the acting manager of the Harrisburg FSDO. (Def.'s Ex. D, Kreider Decl. ¶¶ 2-3.) On or about February 14, 2001, the FAA posted Vacancy Announcement Number AEA-AFS-01-26-55102 seeking a permanent manager of the Harrisburg FSDO. (Pl.'s Ex. 6 at 2.) Both Puntillo and James J. Stevenson submitted bids for the manager position. (*Id.* at 38.) Puntillo was determined to be qualified for the manager position and Stevenson was not; however neither individual was selected. (*Id.* at 42.) On July 15, 2001, Kreider was non-competitively permanently assigned to the manager position. (Kreider Decl. ¶¶ 2-3.)

### 1.   The assistant manager vacancy

On May 16, 2001, the FAA posted vacancy announcement AEA-AFS-01-39-56730 seeking a supervisory aviation inspector, whose duties would be to serve as the assistant manager of the Harrisburg FSDO. (Def.'s Ex. E, Vacancy

---

[1] Puntillo's job title at the Harrisburg FSDO was the Principal Operations Inspector for a FAR Part 121 Certificate, Allegheny Airlines.

Announcement.)  This announcement was prepared by Catherine Harris, a personnel management specialist in the FAA's Eastern Region Human Resources Management Division.  (Def.'s Ex. H, Harris Aff. ¶ 4.)  To qualify for this position, an applicant needed to "possess one year of specialized experience which is in or directly related to the line of work of the position to be filled and which has equipped the candidate with the particular knowledge, skills, ability and other characteristics (KSAOs) to successfully perform the duties of the position."  (Vacancy Announcement at 1.)  In response to a vacancy announcement, applicants submit their documentation to human resources.  (Def.'s Ex. F, FAA Eastern Region Selection Process Guide dated April 2001 at 3; Def.'s Ex.G, EEOC Tr. at 48:9-11, May 4, 2002.)

Twenty applicants applied for the assistant manager position, including Puntillo and Stevenson.  (Puntillo Dep. 21:14-22; Harris Aff. ¶¶ 6-7.)  All applications were submitted to Harris who evaluated the application packages to determine which applicants were minimally qualified for the assistant manager position.  (Harris Aff. ¶4.)  Harris was not aware that Puntillo had engaged in EEO activity.  (EEOC Tr. 226:25, 227:1-2.)  Harris initially determined that eleven of the applicants were minimally qualified.  (Harris Aff. ¶ 7.)  Harris was unable to determine whether three of the applicants, including Stevenson, were minimally qualified because each listed prior military experience as satisfying the necessary requirements of the announcement.  (*Id.*)  Thus, she requested that a subject matter expert be appointed by human resources to review those applications.  (EEOC Tr. 218:15-22.)  Harris had no input as to who was selected as the subject matter expert, and did not question expert's opinion about whether any of the individuals referred were or were not minimally qualified.  (*Id.* at 219:7-9, 219:21-220:1.)

### a.  **Subject Matter Expert**

Harris' request for a subject matter expert went to Ronnie Chin of the Resource Management Branch of the FAA Eastern Region Flight Standards Division who appointed David Bowden as the subject matter expert to review the three applications referred by Harris.  (Def.'s Ex. I, Chin Aff. ¶ 9.)  Neither Chin nor Bowden was aware that Puntillo engaged in prior EEO activity at the time of Bowden's appointment as the subject matter expert.[2]  (*Id.* at ¶ 14; EEOC Tr. 164:23-25, 165-1-3.)  In making his determination, Bowden looked at the positions the individuals held outside of the FAA to determine whether the supervisory responsibilities of those positions are equivalent to someone within the FAA supervising a person that is a GS 13 inspector.  (EEOC Tr. 160:8-15.)  As to Stevenson, Bowden sought the assistance of Phillip Ide, a co-worker who had 30 years of military experience, because there was terminology in Stevenson's application with which Bowden was not familiar.  (*Id.* at 162:17-25, 163:1-4.)  After speaking with Ide, Bowden determined that Stevenson was minimally qualified.  (*Id.*)  Ide did not know of Puntillo's prior EEO activity at the time he assisted Bowden.  (EEOC Tr. 173:12-16.)  Bowden was permitted to speak with Ide in making his determination that Stevenson was minimally qualified for the assistant manager position.  (Chin Aff. ¶ 7.)  Bowden determined that Stevenson and another of the referred applicants had the requisite experience to minimally qualify for the assistant manager position and notified Chin by e-mail.[3]  (Harris Aff. ¶¶12-13.)  Chin informed Harris of Bowden's decisions and Harris included these two in the

---

[2]  In fact, Bowden testified at the EEOC hearing that he did not know who Puntillo was at the time he determined that Stevenson met the qualifications for the assistant manager position.  (EEOC Tr. at 164:23-25, 165:1-3.)

[3]  Bowden determined that the third individual referred by Harris was not minimally qualified.

certificate of eligible candidates that she referred to Kreider, the manager of the Harrisburg FSDO and the selecting officer for the search. (*Id.* at ¶ 4; Def.'s Ex. L, Certificate of Eligible Candidates.)

### b. Interview Selection Process

Kreider learned for the first time who had applied for the assistant manager position at the time he received the list of qualified applicants from Chin. (EEOC Tr. 24:1-8.) Kreider did not assist in preparing the job vacancy announcement, the initial evaluation of the candidates, preparing the list of eligible candidates, the decision to send Stevenson's application to a subject matter expert, or in the selection of the subject matter expert. (Def.'s Ex. D., Kreider Decl. ¶¶ 8-10; Harris Aff. ¶ 5.) Kreider, as the selecting officer, had the discretion to decide whether the candidates would be ranked and rated by human resources or whether all of the candidates would be referred to him for review and selection. (Def's Ex. N, FAA's Human Resources Operating Instructions, Method of Evaluating Candidates at 3.) Kreider chose to have all of the minimally qualified candidates referred to him rather than rated and ranked. (Kreider Decl. ¶ 14; EEOC Tr. 22:20-25, 23:1-3.)

Once the candidates were referred, Kreider had the discretion whether to interview all, some, or none of the candidates who were qualified. (Def.'s Ex. O, FAA's Human Resource Policy Manual, Interview Policy 1.8 at ¶ 1.) Kreider chose to interview all thirteen of the minimally qualified applicants. (Kreider Decl. ¶ 14; EEOC Tr. 22:20-25, 23:1-3.) Kreider also had the discretion to conduct the interviews himself or with the assistance of a panel. (Def.'s Ex. F, FAA Easter Region Selection Process Guide, April 2001 at 11.) Kreider elected to conduct panel interviews and chose three panel members: Richard Madden, Marian Clemens, and Neil Holtzer. (Kreider Decl. ¶¶ 18-20.) None of the panel members was from the

Harrisburg FSDO and two of them—Madden and Clemens—knew nothing of Puntillo's EEOC activity. (Def.'s Ex. Q, Maddan Decl.; EEOC Tr. 153:19-21.)

### c. **The interviews**

The interviews were initially scheduled to be conducted on September 11, 2001 in New York City at the FAA's Eastern Region Office. That morning Kreider learned that Neil Holtzer could not sit on the panel. (Def.'s Ex. P, Kreider Dep't of Trans. Aff. at 3-4; Def.'s Ex. R, Kreider Dep. 155:14-21, 156:2-6, Jan. 4, 2008.) Rather than have only two interviewers, Kreider decided to sit on the panel as well. (EEOC Tr. 50:2-17; Kreider Dep't of Trans. Aff. at 4; Kreider Dep.154:12-16, 158:10-18, Jan. 4, 2008.) Prior to the interviews, the panel selected thirteen questions from various lists that were prepared by FAA's human resources department. (Kreider Dep. 160, 161, Jan. 4, 2008.) Prior to the day of the interviews, Kreider did not review the bid packages with anyone, including the two other members of the panel. (Kreider Decl, ¶25.)

The interviews began on September 11, 2001 in New York City but were stopped after only two candidates were interviewed because of the attack on the World Trade Center. (EEOC Tr. 51, 152.) The interviews resumed in October 2001 at the Allentown Flight Standards District Office. (*Id.* at 70.) All thirteen of the candidates were interviewed and all were asked the same questions. (*Id.* at 50, 79-80, 152-153.) The interviewers rated the candidates answers to each question on a scale of 1 to 5 with one being the lowest and 5 being the highest. (*Id.* at 52, Def.'s Exs. S, T, U.) Each panel member independently scored each candidate, and the members did not collaborate in scoring any of the candidates. (Kreider Decl. ¶¶ 29-30; EEOC Tr. 80, 152-153.) The panel did not discuss the specific scores of each applicant after each interview, rather they waited until all the interviews were completed and all of the panel members completed their scoring to discuss and compare scores. (Kreider Decl.

¶¶ 35-36; EEOC Tr. 71:14-19.)  However, after Puntillo's interview one of the panel members commented to Kreider after Puntillo left the room that "there was a lot of anger in [Puntillo's] answer" to one of the questions.  (Pl.'s Ex. 37, Kreider Dep't of Trans. Aff. 7.)

### d.  Selection of the assistant manager

After all of the interviews, Kreider added all of the scores for each candidate.  (EEOC Tr. 71.)  Of the thirteen candidates, each panel member individually rated Kenneth Shuman ("Shuman") the highest with an aggregate score of 158.  (Def.'s Ex. V, Panel Interview Results.)  Kreider offered the assistant manager position to Shuman in December 2001 but Shuman declined the job.  (EEOC Tr. 56.)  Kreider then offered the job to Stevenson who was the applicant with the second highest aggregate interview score: 143.5.  (*Id.* at 54; Def.'s Ex. V.)  Stevenson accepted the position and became the assistant manager at the Harrisburg Flight Standards District Office on January 27, 2002.  (Def.'s Ex. L, Official Notification of Selectees.)  Puntillo scored seventh out of the thirteen candidates with a total score of 96.5.  (Def.'s Ex. V.)  Madden attests that he "was not told, asked, or influenced by Mr. Kreider or anyone else to give Mr. Puntillo lower scores than were merited by his answers."  (Def.'s Ex. Q, Madden Decl.)  During the EEOC hearing, Clemens testified that no one exerted any influence over his decision to give Puntillo the scores that he gave.  (EEOC Tr. 153.)   At the time that he selected Stevenson, Kreider was aware that Puntillo had engaged in prior EEO activity in 2000.  (Kreider Dep't of Trans. Aff. 1.)  At the time he was selected as assistant manager, Stevenson was aware that Puntillo had engaged in prior EEO activity in 2000.  (Def.'s Ex. AA, Stevenson Dep't of Trans. Aff. 1.)

### e. **Puntillo's EEOC Complaint**

On January 15, 2002, Catherine Harris informed Puntillo by letter that he was not selected for the Harrisburg FSDO assistant manager position.[4] (Pl.'s Ex. 18 at 1.) On or about January 18, 2002, Puntillo contacted Defendant's Human Resources Department to formally complain about his non-selection as manager. (Pl.'s Ex. 18, at 2; Def.'s Ex. X.) The parties unsuccessfully attempted to resolve the complaint through alternative dispute resolution on April 17, 2002. (Def.'s Ex. X, at 4.) On April 30, 2002, Puntillo filed an EEOC complaint challenging his non-selection for the assistant manager position. (Pl.'s Ex. 18 at 21-22.)

### 2. **Events after Stevenson was selected as manager**

### a. **Leave Slips**

Once Stevenson became manager, there were numerous points of tension between him and Puntillo, as well as between Kreider and Puntillo. Specifically, Stevenson required that Puntillo put his Social Security number on his leave slips and fill them out in ink rather than pencil. (Puntillo Dep. 89:5-8). When leave slips were submitted to Stevenson that were filled out in pencil rather than ink, Stevenson approved them but would also return them to Puntillo with instructions to complete them in ink in the future. (Def.'s Ex. Z, Stevenson Dep. 49:2-5, 113:3-5, Jan. 8, 2008.) At other times, Stevenson wrote notes on Puntillo's leave slips because he either forgot to include his Social Security Number, (Def.'s Ex. DD), or they were incomplete, (Def.'s Ex. EE). However, Stevenson never denied Puntillo leave. (Stevenson Dep. 114.) In addition to the issues surrounding Puntillo's leave slips, Puntillo on one occasion submitted an undated travel voucher. (Puntillo Dep. 90:6-11, 125:15-17.) Stevenson did not approve the voucher without a date, rather he placed it

---

[4]Puntillo may have learned of his non-selection as early as January 2, 2002. (Def.'s Ex. X at 3.)

in Puntillo's in-box with a note to fill in the missing information. (Def.'s Ex. CC, Stevenson Decl. ¶¶14-15.) Once the date was filled in, the voucher was processed. (Stevenson Dep. 138, Jan. 8, 2008.)

### b. Committee meetings

Additionally, Puntillo was supposed to attend a FAA committee meeting in Washington, DC from July 22-25, 2002. Stevenson made some calls to the FAA in Washington to see if Puntillo's participation in the committee was necessary, and to see if he was permitted to use his own vehicle for the trip and bill mileage to the committee. (Puntillo Dep. 44 89-92.) Puntillo was permitted to go to the committee meeting. (Stevenson Dep. 136, Jan. 8, 2008.) In addition to questioning Puntillo about his committee work, Stevenson and Kreider also denied Puntillo at least one training opportunity, although the training was not essential to the performance of Puntillo's job responsibilities. (Puntillo Dep. 95-105.)

### c. Williamsport airport incident

In March 2002 when Puntillo was on accident standby when an incident occurred at the Williamsport airport. (Puntillo Dep. 103.) Rather then send Puntillo to investigate the incident, Kreider sent another investigator to the Williamsport Airport. (Puntillo Dep. 134.) Despite not going to Williamsport, Puntillo prepared an FAA incident report and completed the investigation of the incident. (Def.'s Ex. JJ, FAA Incident Report; Puntillo Dep 135.) After the report was completed, Stevenson was responsible for reviewing it. (Stevenson Decl. ¶¶ 21-22.) Stevenson questioned Puntillo's conclusion about the cause of the accident and called the pilot to further question him about what he did or did not see on the runway. (*Id.* ¶¶ 23-24.) Stevenson spoke with Kreider about the report and his concern about Puntillo's investigation. (*Id.* ¶ 26.) At Kreider's suggestion, Stevenson gave the report back to Puntillo for further investigation. (*Id.* ¶ 27.) Thereafter, informal meetings were held

between Kreider, Puntillo and a union representative to discuss Puntillo's handling of the investigation. (Puntillo Dep. 134-135.) Puntillo was not disciplined for his handling of the investigation and he did not file a grievance. (*Id.*) The conclusions in the report were never changed and remain the way that they were originally written by Puntillo. (*Id.*)

### d. Other incidents

There were other areas of tension between Puntillo and Kreider as well as between Puntillo and Stevenson. In July 2002, various employees of the Harrisburg FSDO sent letters to the FAA's Eastern Region office complaining about Puntillo. (*Id.* at 100-103.) Around this same time, Kreider came out of his office and confronted Puntillo by pointing his index finger with his thumb raised and said to Puntillo "You're going to get yours, you'll get yours." (*Id.* at 100:1-16.) The context for this statement is unclear from the record.

Finally, when both the manager and the assistant manager are not present at the Harrisburg FSDO the practice is for them to place someone in charge of the facility while they are away. (Puntillo Dep. 105.). During the entire time that Kreider was the manager Puntillo was never placed in charge of the office despite being one of the most senior employees. (*Id.*) In addition, after Kreider became manager, he informed Puntillo and others that they would no longer be permitted to leave voicemail messages with the front desk when they are sick. (Kreider Decl. 83.) Instead, they were required to speak to or leave messages with a supervisor when he or she wanted sick leave. (*Id.* at ¶ 83-85.)

In September 2002, Puntillo took a comparable position within the FAA that was not stationed at the Harrisburg FSDO. (Puntillo Dep't of Trans. Aff. 1.) In his new position, Puntillo was not supervised by either Kreider or Stevenson.

**B.     Procedural History**

Plaintiff filed his complaint on November 14, 2005 (Doc. 1) and an amended complaint on May 9, 2007.  (Doc. 18.)  After discovery, Defendant filed a motion for summary judgment on June 26, 2008.  (Doc. 53.)  A brief in support was filed the same day.  (Doc. 54.)  Plaintiff filed a brief in response on July 14, 2008. (Doc. 61.)  Defendant filed a reply brief on July 28, 2008.  (Doc. 67.)  This matter is ripe for disposition.

**II.     Legal Standard**

"In an employment discrimination case, the burden of persuasion on summary judgment remains unalterably with the employer as movant.  The employer must persuade [the court] that even if all of the inferences which could reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to the plaintiff, no reasonable jury could find in the plaintiff's favor." *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008).  Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56c; *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Id.* at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "'Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**III.**    **Discussion**

    **A.**    **Puntillo's Non-Selection for the Assistant Manager Position**

Defendant argues that it is entitled to summary judgment because: (1) Plaintiff cannot establish a *prima facie* case of retaliation as there is no causal connection between his EEO activity and his non-selection as the assistant manager at the Harrisburg FSDO; and that (2) even if a *prima facie* case for retaliation can be made, Plaintiff cannot rebut Defendant's proffered non-discriminatory reasons for his non-selection.

In his Amended Complaint, Plaintiff avers that "the sole reason the FAA denied Mr. Puntillo a promotion to the assistant manager's position was to penalize him for his lawful, protected conduct in assisting a co-worker in her complaint against

a Manager . . . ." (Doc. 18 ¶ 14.) Plaintiff also alleges that the selection process was intentionally manipulated so as to avoid promoting him. (*Id.* ¶¶15, 17.)

### 1.    Plaintiff's *Prima Facie* Case

Under the anti-retaliation provisions of Title VII, Plaintiff must come forward with some evidence establishing that a *prima facie* case of retaliation exists. "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that '(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action.'" *Moore v. City of Phila.,* 461 F.3d 331, 340-41 (3d Cir. 2006) (*quoting Nelson v. Upsala Coll.,* 51 F.3d 383, 386 (3d Cir. 1995)).

Here, Defendant has conceded that Plaintiff has met the first two prongs of his *prima facie* retaliation claim. (Def.'s Br. in Supp. of Mot. for Sum. J at 11.) However, Defendant argues that Plaintiff cannot demonstrate that there is a causal connection between his failure to be promoted and his protected activity. The court agrees. Even when all inferences which could reasonably be drawn from the evidentiary materials of record are viewed in the light most favorable to Plaintiff, no reasonable jury could find that Plaintiff's failure to be promoted to the assistant manager of the Harrisburg FSDO was causally related to Plaintiff's protected activity. *See Doe*, 527 F.3d at 362.

In fact, Plaintiff comes forward with little more than his conjecture that his non-selection was in retaliation for his prior EEO activity. Plaintiff asserts that he can meet the causation prong of his *prima facie* case because of "an inference . . . based on temporal proximity." (Pl.'s Br. in Opp. to Def.'s Mot. for Sum. J. at 7.) Ironically, the temporal proximity that Plaintiff spends the most time talking about is the proximity between his application for the Harrisburg FSDO manager's position in

April of 2001—an event that was not the basis of his complaint to the EEOC or this court—and his involvement with Bailey's EEOC complaint in June of 2000. Plaintiff appears to argue that the court should infer from the fact that Defendant cancelled the *manager* search, a position that Plaintiff applied for and for which he was deemed minimally qualified, in such close proximity to his EEOC activity that there is a causal connection to Plaintiff not getting the *assistant manager* position. Defendant's logic might have been sufficient to establish a *prima facie* case of retaliation had his complaint been based upon the manager position being cancelled. It was not.

Instead, the adverse employment action complained of happened in December 2001, almost 18 months after Plaintiff's involvement in Bailey's EEOC complaint and more than 8 months after his own EEOC complaint was dismissed. Without more, the mere fact that his non-selection followed his protected activity is insufficient for the court to draw an inference of retaliation. *See Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 503 (3d Cir. 1997) ("Even if timing alone could ever be sufficient to establish a causal link, we believe that the timing of the alleged retaliatory action must be "unusually suggestive" of retaliatory motive before a causal link will be inferred." (*quoting Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997).) In this case, the timing of Plaintiff's non-selection is not so proximate as to be unusually suggestive.

In his brief, Plaintiff obliquely suggests that there were other facts from which the court could infer a causal connection between his non-selection and his protected activity. First, Plaintiff claims that Kreider's decision to refer all eligible candidates for interviews rather than rate and rank them shows a biased and tainted procedure, the purpose of which was to dilute Plaintiff's chances of being selected. It is difficult for the court to see how interviewing all of the candidates diminished Plaintiff's chances anymore than it hurt the chances of any of the other candidates.

Each applicant was minimally qualified and not ranked going into the interview. Each applicant was asked the same thirteen questions by the same interviewers. Each applicant was scored using the same rubric. Without some indication from the record that Kreider's decision to interview all of the minimally qualified applicants was motivated to punish Puntillo, it strains credulity that interviewing everyone was retaliatory. "The evidence most often used to establish this nexus is that of disparate treatment, whereby a plaintiff shows that she was treated less favorably than similarly situated employees who are not in plaintiff's protected class." *See Doe,* 527 F.3d at 366 (*citing Iadimarco v. Runyon,* 190 F.3d 151, 162 (3d Cir. 1999). Here, Plaintiff has come forward with no probative evidence suggesting that he was treated differently than all of the other applicants for the position.

Second, Plaintiff argues that the make-up of the interview panel was also tainted because Kreider "chose his friends to serve as the interviewers." (Br. in Opp. at 10.) While it is true that the record reflects that Kreider knew the other two interviewers, the record is devoid of any indication that this was material to the ultimate selection of Stevens as the assistant manager. In fact, the record reflects that both Madden and Clemens—the two interviewers in addition to Kreider—were unaware of Puntillo's prior EEO activity[5] and that neither was influenced to score Plaintiff's interviews lower than the selected candidate. (Def.'s Ex. Q, Madden Decl.; EEOC Tr. 153.) Moreover, the records reflects that the panel members sat so that the could not see each other's scores and independently scored each candidate. (EEOC Tr. 50.)

---

[5]In his brief and counterstatement of material facts, Plaintiff asserts that both Maddan and Clemens knew about the EEOC activity simply because they were friends with Kreider; however, Plaintiff provides nothing more than speculation on this point. Plaintiff has not directed the court to any citation to the record that would contradict both Madden's and Clemens' assertions that they knew nothing of Plaintiff's EEO activity at the time of the interviews

In rebuttal, Plaintiff points to his own deposition where he testified that he believes that Kreider told the other two interviewers about his EEO activity because the FAA Eastern Region is a very small group and "I think the word got around." (Puntillo Dep. 41:9-10.) Plaintiff's belief that Madden and Clemens knew of his EEO activity, without more, does not create a genuine issue of material fact for trial. *See Fuentes v. Perskie,* 32 F.3d 759, 766 (3d Cir. 1994) (noting that Plaintiff's unsupported belief alone is insufficient to raise an issue of material fact).

Additionally, Plaintiff points to a statement Kreider made in response to an EEOC inquiry where he stated that:

> There was one question regarding EEO, or hostile work environment, and I was surprised by his response, which was he knows about a hostile work environment. One of the panel members commented to me after Mr. Puntillo left the room that there was a lot of anger in that answer.

(Kreider EEOC Aff. at 7.) While this statement raises questions about whether other comments were made during the interviews, the court does not believe that this fact alone would allow a jury to reasonably conclude that the interview process was tainted. *See Moore,* 461 F.3d at 342 (stating that to survive a motion for summary judgment in the employer's favor, a plaintiff must produce some evidence from which a jury could reasonably conclude that he has stated a *prima facie* case). This is particularly true given that *none* of the other facts surrounding the interview process demonstrate a retaliatory motive.

Finally, Plaintiff argues that the court can infer a causal connection between his EEO activity and his non-selection based on the various comments by Kreider made 8 months prior to Puntillo's non-selection as manager. Specifically, in February, March and April 2001 Kreider told Puntillo that he wanted an assistant manager without any baggage, and around that same time he told Puntillo that he had heard a rumor that Puntillo had gotten rid of the previous manager so that Puntillo

16

could get the manager's job. Although these comments could be viewed as evidence of animus on the part of Kreider, in the court's opinion they are too attenuated from the interview process itself to allow a reasonable jury to find in the plaintiff's favor. *See Doe*, 527 F.3d at 368 ("[S]tray remarks by decision makers, which were unrelated to the decision-making process, are rarely to be given weight, particularly if they are made temporally remote from the date of the decision.")

In light of the foregoing, the court does not believe that Plaintiff has come forward with evidence sufficient to demonstrate a *prima facie* case that his non-selection was in retaliation for his protected EEOC activity. However, recognizing that the *prima facie* requirement "is not onerous" and poses a "burden easily met" the court will analyze the second prong of the *McDonnell Douglas* test. *Texas Dep't of Cmty Affairs v. Burdine*, 450 US 248, 253 (1981).

### 2. Defendant's proffered non-discriminatory reasons

According to the familiar *McDonnell Douglas* burden shifting analysis, if Plaintiff establishes his *prima facie* case, "'the burden shifts to the employer to advance a legitimate, non-retaliatory reason' for its conduct." *Moore*, 461 F.3d at 342 (*quoting Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 500-01 (3d Cir. 1997).

Here, Defendant asserts that Kreider did not select Plaintiff for the assistant manager position because, "based upon his interview, he was not the highest scoring candidate but, instead, scored only seventh our of thirteen candidates." (Br. in Supp. at 15.) This conclusion is amply supported by the record. In his declaration, Kreider attests that he chose the candidate who received the highest score from the interviews: Kenneth Shuman. (Kreider Decl. ¶ 37.) Each interview panelist scored Shuman the highest out of the thirteen candidates. (Def.'s Ex. V.) When Shuman declined the job, Kreider offered it to the applicant who scored second highest based

on the interview scores: James Stevenson. (*Id.*) Plaintiff's score was seventh out of thirteen applicants. (*Id.*)

Both Madden and Clemens testified that Plaintiff scored lower than the applicants who were rated higher because his answers to questions were incomplete. (EEOC Tr. 84:12-19; 156:17-20.) This is a legitimate, non-discriminatory reason for Plaintiff's non-selection.

### 3. <u>Plaintiff's rebuttal that Defendant's proffered reasons were pretextual</u>

Once Defendant produces some evidence of a non-retaliatory reason for its action, 'the plaintiff must be able to convince the factfinder both that the employers' proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" *Moore*, 461 F.3d at 342 (*quoting Krouse,* 126 F.3d at 500-01). Plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered reasons that a reasonable fact finder could rationally find the proffered reasons unworthy of credence and infer that the employer did not act for those reasons. *Fuentes,* 32 F.3d at 765. Here, Plaintiff asserts that he met his burden of producing such evidence in three ways: (1) that Defendant failed to follow its own policies in the selection process; (2) that other employees in the same protected classes have experienced retaliation; and that (3) Stevenson's qualifications were suspect, making Defendant's reasons for finding him qualified suspect. The court will address each of these in turn.

### a. <u>Failure to follow policy</u>

First, Plaintiff argues that Defendant's failure to rate and rank the qualified candidates is a deviation of FAA policy. In support, he cites Exhibit 15 attached to his Reply to Defendant's Statement of Material Facts. That exhibit is a five-page document titled "Selection Process Guide Briefing Notes." Plaintiff refers

18

the court to Slide 11[6] which reads, in part, "[i]f there are more than 10 applicants applying for the position, then a rating and ranking panel is convened." Plaintiff concludes that if the candidates had been ranked and rated that Stevenson would not "have had a chance." (Pl.'s Reply to Def.'s Stat. of Mat. Facts ¶ 4.) Exhibit 15 is not verified or otherwise authenticated and has no intrinsic characteristics that would allow the court to determine that it would be admissible at trial and, thus, the court cannot consider it in making its determination. *See* Fed. R. Civ. P. 56(e); *Shelton v. Univ. of Medicine*, 223 F.3d 220 (3d Cir. 2000) ("In this circuit, hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial."). Moreover, Plaintiff's assertion that if the candidates had been ranked and rated Stevenson would not have been selected is based solely on the opinion of Brenda Bailey, a co-worker not involved in the selection, and whose opinion was based on the fact that Stevenson was not qualified for the manager's position which was ranked and rated. (Bailey Dep. 72.) There is nothing in the record supporting Ms. Bailey's conclusion except that Stevenson did not qualify for the manager's position. This is insufficient to allow any jury to conclude that Defendant's proffered reasons for not selecting Plaintiff for the assistant manager position were mere pretexts.

Second, Puntillo argues that the FAA failed to follow its own policies because "James Ballough . . . along with Larry Kreider, both of whom knew of Mr. Puntillo's EEO activity, provided inappropriate advice to James Stevenson" about what should be included and excluded from his resume. (Br. in Opp. at 9.) Plaintiff points to no evidence in the record suggesting that such resume coaching was actually improper. More problematic, however, is that the court fails to see how this coaching,

---

[6]Plaintiff actually refers the court of Slide 10, but the language that Plaintiff quotes is from Slide 11. (Pl's Reply to Def.'s Stat. of Mat. Facts ¶ 4.)

even if it were improper, was motivated to retaliate against Puntillo rather than the more benign purpose of bolstering Stevenson.

Taking all of this together, Plaintiff has failed to produce admissible evidence that would lead a reasonable fact finder to believe that Defendant violated its own policies and, as such, the entire selection process was a sham designed to retaliate against Plaintiff.

### b.  <u>Other employees in the same protected classes</u>

Plaintiff also asserts that he has provided evidence that both Brenda Bailey and Diana Devore have suffered retaliation at the hands of Defendant for asserting their EEO rights and that this is sufficient to prove that Defendant's stated reasons for non-selection were pretexts for retaliation.  It is true that evidence of discrimination against others in Plaintiff's protected class may be admissible.  *See Sprint/United Management Co. v. Mendelsohn*, 2008 U.S. LEXIS 2195 *1, 128 S.Ct 1140 (Feb. 26, 2008); *Hurley v. Atl. City Police*, 174 F.3d 95,110 (3d Cir. 1995). Here, Plaintiff has produced scant evidence of retaliation against Ms. Bailey that would be probative to issues in this case.  In fact, Ms. Bailey admits that she was not retaliated against for participating in Plaintiff's case and has not filed an EEOC complaint against Kreider for reprisal.  (Bailey's Dep. 214:18-20, 215:7-11.)

As for Ms. Devore, the record reflects that she did file an EEOC complaint in 2005, however, that complaint was settled and there was no finding of retaliation against Defendant.  (Def.'s Ex. YY.)  Although, the information submitted by Plaintiff suggests that the issues in Ms. Devore's EEOC complaint concerned the FAA's denial of leave, (*See* Pl.'s Ex. 20.), all of the events complained of by Ms. Devore occurred at the earliest in August of 2005, nearly three years *after* Plaintiff left the Harrisburg FSDO.  The fact that these allegations are not temporally proximate to Plaintiff's allegations mitigates heavily against a reasonable jury finding them

20

probative of retaliation by Defendant. It simply is not enough for Plaintiff to question Defendant's proffered non-discriminatory reasons for his non-selection. Rather, "to avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a fact-finder reasonably to infer that each of the . . . proffered non discriminatory reasons was either a post-hoc fabrication or otherwise did not actually motivate the employment action . . . ." *Doe*, 527 F.3d at 370. Here, the court does not believe that Plaintiff has met this burden of producing some evidence from which a reasonable jury could infer pretext.

### c. Stevenson's Qualifications

Finally, Plaintiff argues that Stevenson is unqualified for the position of assistant manager and, therefore, the court should infer that Plaintiff's non-selection was motived by retaliation. Putting aside the obvious logical fallacies inherent in this position, Plaintiff is, in essence, asking the court to second guess the hiring of Stevenson. This is not the court's prerogative. *See e.g.*, *Burdine*, 450 U.S. at 259 (stating that an employer must be granted substantial discretion to exercise subjective judgment in the rendering of employment decisions). Moreover, Plaintiff has pointed to no competent evidence that would allow a fact finder to infer that Stevenson's hiring was motivated by retaliatory animus toward Puntillo.

In light of the foregoing, the court finds that there are no genuine issues of material fact concerning Plaintiff's non-selection for the assistant manager position. Moreover, the court concludes that no reasonable jury could find that Defendant's proffered reasons for not selecting Plaintiff were fabricated or pretextual. Defendant is entitled to summary judgment on Plaintiff's retaliation claim based on his non-selection as assistant manager.

## B.     Post-selection retaliation claim[7]

As to Plaintiff's post-selection retaliation claims, Defendant argues that it is entitled to summary judgment because Plaintiff cannot establish that the alleged incidents complained of were in retaliation for his EEO activity or that the alleged incidents were materially adverse to his employment with the FAA.  The court agrees.

In his Amended Complaint, Plaintiff asserts that after he was not selected for the assistant manager position both Kreider and Stevenson continued to engage in unlawful retaliation.  Specifically, Puntillo asserts that between January 2002 and September 2002 Kreider and Stevenson systematically interfered with his ability to do his job by: (1) requiring him to complete leave slips in pen rather than pencil; (2) delaying the approval of a travel voucher until Plaintiff dated it; (3) questioning his participation in a committee and his desire to use his personal vehicle for travel to and from the committee meetings; (4) refusing to allow him to attend training; (5) making Plaintiff speak to a supervisor or leave a voicemail for a supervisor when he called in sick rather than simply leaving a voicemail at the front desk; (6) Kreider's correction of Plaintiff's FAA incident report involving an incident at the Williamsport airport; (7) the fact that Plaintiff was never placed in charge of the Harrisburg FSDO during the absence of Kreider and Stevenson; and (8) the fact that some of his co-workers wrote letters to FAA Eastern Region staff indicating that Plaintiff was the source of tension at the Harrisburg FSDO.

---

[7]There is some confusion between the parties about whether Plaintiff asserted a retaliation claim or a hostile work environment claim for the post-selection activity.  In his Brief in Opposition to Summary Judgment, Plaintiff asserts that he is not alleging a hostile work environment.  (Br. in Opp. at 15-16.)  As such, the court will construe his claim as a retaliation claim under the antiretaliation provision of Title VII.

The facts surrounding each of these incidents are set forth in detail in Part I.A.2 above. A review of the record reveals that these incidents both in isolation and in aggregate, and Defendant's responses thereto, do not constitute retaliation under Title VII. The record is devoid of evidence that any of these incidents affected either Plaintiff's ability to perform his job or in any way dissuaded him from asserting his rights under Title VII. "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces injury or harm." *Burlington Northern & Santa Fe Railway Company v. White,* 548 U.S. 53, 67 (2006). To prevail, Plaintiff must be able to show that "a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68 (*quoting Rochan v. Conzales,* 438 F.3d 1211, 1219 (D.C. Cir. 2006) (internal quotes omitted)).

Here, the record reflects that the events complained of by Plaintiff are at best "those petty slights and annoyances that often take place at work and that all employees experience" and, thus, do not rise to the level of actionable retaliation under Title VII. *Id.* Accordingly, the court finds that Plaintiff has failed to come forward with competent evidence demonstrating a *prima facie* case of retaliation for the post-selection conduct of Defendant. Since Plaintiff has failed to make a sufficient showing regarding an essential element upon which he will bear the ultimate burden of proof at trial, all other facts are necessarily immaterial and the court will grant Defendant's motion for summary judgment as to Plaintiff's post-selection retaliation claim. *See Celotex,* 477 U.S. at 321.

**IV.      Conclusion**

In accordance with the foregoing, the court will grant Defendant's motion for summary judgment and issue an appropriate order.

                                                    s/Sylvia H. Rambo
                                                    SYLVIA H. RAMBO
                                                    United States District Judge

Dated:  May 19, 2009.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD V PUNTILLO,** | : | **CIVIL NO. 1:05-CV-2370** |
| **Plaintiff** | : | **JUDGE SYLVIA H. RAMBO** |
| **v.** | : | |
| **NORMAN T. MINETA, Secretary** | : | |
| **U.S. Department of Transportation,** | : | |
| **Defendant** | : | |

## O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT**:

(1)    Defendant's motion for summary judgment (Doc. 53) is **GRANTED;**

(2)    The Clerk of Court is directed to enter judgment for Defendant and against Plaintiff and close the case.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  May 19, 2009.